UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

|  |  |  |
|---|---|---|
| Sandi Stone, ) | | |
| Plaintiff, ) | | |
| v. ) | | |
| ) | Docket No. | |
| University of New Orleans Research ) | | |
| and Technology Foundation, Inc., ) | | |
| XYZ Insurance Cos. 1-10 ) | | |
| ) | | |
| Defendants. ) | | |

# COMPLAINT

1. Plaintiff Sandi Stone was the Director of Real Estate for the University of New Orleans Research and Technology Foundation, Inc. ("UNORTF").

2. In 2020, UNORTF had fifteen employees – eight men and seven women.

3. When COVID-19 hit, UNORTF designated half its employees as "essential workers" and kept them in the office. It sent the other half home on mandatory leave, requiring them to use their accrued vacation time.

4. But UNORTF did not do so equitably: 100% of the workers it designated "essential" were male, and 100% of the workers it designated "non-essential" were female.

5. The probability of such an outcome happening by chance is approximately one hundredth of one percent.[1]

6. The three highest-ranking female employees – Sandi Stone, Brenda Desselle, and Carolyn Bryant – complained about the discrimination. UNORTF responded by eliminating their positions and firing all three of them.

7. UNORTF eliminated those positions and fired the three women who complained about gender discrimination even though the foundation had accepted $266,913 from the federal

---

[1] Specifically, .01554% That is derived by calculating: 8/15*7/14*6/13*5/12*4/11*3/10*2/9*1/8

government in PPP loan forgiveness on the promise that it would preserve those job roles.

8. Ms. Stone now brings suit to seek accountability for the gender discrimination and retaliation UNORTF subjected her to.

## I.  JURISDICTION AND VENUE

9. Plaintiff brings this action pursuant to Title VII of the Civil Rights Act, and other statutes. Jurisdiction is based on 28 U.S.C. § 1331 (federal question). Plaintiff further invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 to hear claims arising under state law.

10. Venue in this Court is proper pursuant to 28 U.S.C. § 1391 as a substantial part of the events giving rise to Plaintiffs' claims arose in the Eastern District of Louisiana, and because Defendants reside and do business in the District.

## II.  PARTIES

*Plaintiff*

11. <u>Plaintiff Sandi Stone</u> is an adult citizen of the State of Louisiana and domiciled in the Eastern District of Louisiana.

*Defendants*

12. <u>Defendant University of New Orleans Research and Technology Foundation, Inc</u>. ("UNORTF") is a non-profit corporation with charter number 34554468N. At the relevant times, it had more than fifteen employees.

13. <u>Defendants XYZ Insurance Cos. 1-10</u> are unknown insurance companies that insure UNORTF for the claims described herein.

## III.  STATEMENT OF FACTS

14. Plaintiff Sandi Stone worked at UNORTF beginning on November 1, 2001, most recently as Director of Real Estate.

15. The Director of Real Estate is responsible for maintaining quality facilities and services for approximately 822,450 square feet of property and thirty acres of landscaped grounds, while maximizing revenue returns in accordance with the Foundation's mission, vision, and objectives.

16. The Director of Real Estate directly reports to the UNO Research and Technology Foundation Vice President; and supervises a staff of five including an Administrative Assistant, the Director of Engineering, a Chief Engineer and two Building Engineers.

17. At the end of her tenure at UNORTF, Ms. Stone was paid $106,250 as salary.

18. Throughout her employment, Ms. Stone received no disciplinary actions or negative performance reports from management.

19. On January 26, 2020, UNORTF's previous President/CEO, Eileen Byrne, filed an EEOC charge about gender discrimination she had experienced, with board members and others.

20. At the time, UNORTF's eighteen-member board was 100% male.

21. In early 2020, COVID-19 hit Louisiana.

22. As of March 2020, UNORTF had fifteen employees – eight men and seven women.

23. Those employees were as follows:

**Active Staff: Males**

| Name | Hire Date | Position |
|---|---|---|
| Burkart, Michael J. | 11/1/2001 | Chief Engineer |
| Carmichael, Troy A. | 5/30/2017 | Facilities Project Coordinator |
| Corne, Richard J. | 7/25/2019 | Director of Accounting |
| Hammarstrom, Gregory E. | 4/9/2001 | Vice President |
| Jordan, Joshua M. | 6/28/2017 | Staff Accountant |
| Pitman, Andrew O. | 7/18/2005 | Vice President/CFO |
| Randolph, Lucain | 11/1/2001 | Building Engineer |
| Raymond Restivo | 7/26/2012 | Building Engineer |

*8 Active Male Employees*

**Active Staff: Females**

| Name | Hire Date | Position |
|---|---|---|
| Bourgeois, Blair D. | 9/12/2011 | Grants and Contracts Coordinator |
| Bryant, Carolyn B. | 5/7/2009 | Accounts Payable Manager |
| Desselle, Brenda J. | 9/1/2002 | Assistant Vice President |
| Fredricks, Darlene M. | 11/1/2001 | Property Assistant |
| Lopez, Kimberly A. | 4/17/2019 | Accounting Intern - *Student Worker* |
| Howe, Julia U. | 7/1/2007 | Executive Assistant |
| Stone, Sandi J. | 11/1/2001 | Director of Real Estate |

*7 Active Female Employees*

24. On March 22, 2020, UNORTF's board chairman, Arnold Kirschman sent a memo by email to all employees. In his email, Kirschman wrote:

> I'm sure the last few days and weeks have been the most stressful time of our lives. We appreciate the continued support and service you have given our Tenants and Vendors during this COVID-19 outbreak. You are our most valuable asset and I wish we could shield you from this uncertainty. I can assure you that I will continue to keep you informed of our plans and changes as they happen. Please see the attached update where I have outlined the status of the R&T Staff for the next two weeks.

25. The attached memo read as follows:

---

**University Of New Orleans
Research & Technology Foundation**

March 22, 2020

To        UNO R&T Staff:

From    Arnold Kirschman, Chairman

Re        COVID- 19 Plan

I wanted to update you and make sure our lines of communication are open. With this email, everyone has my contact information and you are welcome to email or call me directly. My cell is 504-481-7958.

Our first and most important concern is to help our valued employees and tenants as we move through this difficult period. Unfortunately, the Foundation has limited funds and it is our job to balance these priorities and protect The Foundation for the long term.

With this email I am only addressing the next two weeks. Our hope is that we learn more everyday and the future will become clearer at the end of these two weeks.

Our obligations to UNO, UNOF, Tenants and New Orleans require us to keep Greg, Andrew, Rick, Josh and Troy on full time duty to maintain accounting, payroll, insurance and tenant relations. We will maintain the Park and emergency needs of any occupants in the Park with Mike Raymond and Luke.

Our other valued employees will take these two weeks as vacation time in order to protect their full income. If anyone is not in agreement, I must hear from you immediately.

By the week of March 30 we hope to know much more about the depth and breadth of the COVID-19 virus, our workload and what support is available from the Government.

Most important, stay safe, stay healthy and we pray for a brighter picture in the next two weeks. Please contact me if I can help.

Thank you,


Arnold for the UNO R&T Board and Management

---

26. Notably, the memo identified "Greg, Andrew, Rick, Josh, and Troy" and "Mike Raymond and Luke" as the employees who would be "on full time duty."

27. That is to say, UNORTF kept <u>all</u> the men on "full time duty" and sent <u>all</u> the women home.

28. UNORTF designated Sandi as non-essential, even though she had long been treated as essential. For example, she was the first call after the engineers if engineers were required.

29. There is no pattern other than gender that explains UNORTF's choice:

   a. UNORTF did not send the most senior or the most junior employees home, as Darlene, Brenda, and Sandi were among the longest-serving employees, and Kimberly was among the shortest-serving.

   b. UNORTF did not keep the hands-on workers on duty and send the other workers home, as the two accountants were kept on duty alongside the building engineers.

   c. UNORTF did not keep the highest or lowest paid workers on duty, as the two vice presidents were kept on duty alongside the building engineers.

   d. Nor did UNORTF only send home the non-essential workers – as indicated by the fact that UNORTF had to repeatedly contact Ms. Stone while she was on leave in order to maintain the Park's Services and Tenant Relations.

30. At the request of her supervisor, Ms. Stone continued to work during her period of forced vacation leave. Her supervisor would call her with task items and Ms. Stone would assist.

31. Three of the female employees – Sandi Stone, Brenda Desselle, and Carolyn Bryant – complained about the obvious inequity of sending all the women home, and forcing them to use their vacation time during a period where travel was impossible.

32. On May 22, 2020, the new CEO of UNORTF sent a memorandum to board's Executive Committee members.

33. That memorandum said that UNORTF had "made the decision to eliminate three positions."

34. Those three positions were the positions held by Sandi Stone, Brenda Desselle, and Carolyn Bryant.

35. Those were the three women who complained about gender discrimination.

36. The memo suggested that Ms. Stone's job functions were duplicated, and that she was not capable or qualified for other functions.

37. The contents of that memo were false, with regards to Ms. Stone.

38. A diagram of UNORTF's organizational at one point in time[2] structure shows that Sandi, Brenda, and Carolyn had been targeted across various departments, at various levels:



---

[2] This org chart was provided by UNORTF with Sandi, Brenda, and Carolyn crossed out. It does not, however, reflect the structure of the organization prior to May 2020. For example, prior to her termination, Darlene and the engineers reported to Sandi.

39. UNORTF even skipped over eliminating positions that were *vacant* in order to target the three women who had complained about gender discrimination.

40. Those three women were the highest-ranking women in the organization. After they were fired, there was only one woman in management – the recently hired Rebecca Conwell.

41. On May 29, 2020, Ms. Stone met with the Board Chair in the President/CEO's office. The Board Chair told Ms. Stone that her position was being eliminated and she was being fired pursuant to a Reduction of Force ("RIF").

42. This was unusual for a number of reasons.

43. First, the Board Chair (rather than Ms. Stone's supervisor or the CEO) personally terminated Ms. Stone. The CEO was present but did not speak, other than to answer one question.

44. Second, during the height of the COVID-19 pandemic, the Board Chair called Ms. Stone into the office to terminate her in person. This was Ms. Stone's first day back in the office.

45. And third, only five weeks earlier, UNORTF had been approved for a federal PPP loan (approved April 16, 2020) that was premised on UNORTF not reducing its workforce.

46. Ms. Stone was told to collect her personal belongings and vacate the premises immediately.

47. Ms. Stone asked to be able to schedule a time the next week to collect her items; that request was refused.

48. After she was terminated, Ms. Stone was replaced primarily by men.

49. According to the May 22, 2020 memo, Ms. Stone's duties were "absorbed" by the Facilities Project Coordinator, the CEO, a Vice-President, and the Director of Accounting – three of which were men.

50. UNORTF fired the three women, even though it had accepted $266,913 in federal Paycheck Protection Program (PPP) funds for the retention of sixteen jobs during the pandemic.[3]

51. Forgiveness of UNORTF's PPP loan was contingent on UNORTF retaining sixteen jobs.

52. UNORTF did not retain the sixteen jobs.

53. On December 24, 2020, Ms. Stone filed EEOC charge 461-2021-00429.

54. Her EEOC charge alleged discrimination on the basis of gender and retaliation.

55. Her EEOC charge was timely.

56. On March 1, 2023, the EEOC issued Ms. Stone a right to sue letter.

57. UNORTF has had other indicators of gender discrimination.

58. For example, the Board Chair commented about Ms. Stone, "you know how it is when women and business get together."

59. There were also pay disparities between men and women.

60. For example, in the 2019-2020 time period, several employees picked up additional duties to their jobs, particularly when CEO Eileen Byrne was suspended.

61. But only the men's pay was increased due to the additional responsibilities; not the women's pay.

62. Specifically, Joshua Jordan in accounting picked up additional duties (i.e. IT related) and received increased compensation.

63. On information and belief, Greg Hammarstrom, Vice President, picked up additional duties (*i.e.* a portion of the CEO duties) and received increased compensation.

64. Andrew Pitman was promoted to CFO and then CFO/Vice President and received increased compensation.

---

[3] https://projects.propublica.org/coronavirus/bailouts/loans/university-of-new-orleans-research-and-technology-foundation-2343427210

65. But Sandi Stone, Director of Real Estate, picked up additional duties (*i.e.,* a portion of the CEO duties) but was not provided any increased compensation.

## IV. Causes of Action

### Count One – Gender Discrimination

66. Title VII of the Civil Rights Act bars gender discrimination. Civil Rights Act of 1964, § 701 *et seq.*, as amended, 42 U.S.C. § 2000e *et seq.*

67. La. R.S. 23:332(A) makes it unlawful to discriminate against any individual in employment based on their sex, and applies similar standards to Title VII.

68. Here, UNORTF engaged in prohibited gender discrimination by sending women home to use accrued vacation time during COVID-19 and allowing men to remain in the office without having to use accrued vacation time, and by targeting women for termination first.

### Count Two - Retaliation

69. Title VII, specifically 42 U.S.C. § 2000e-3 makes it unlawful for an employer to retaliate against an employee who has opposed an unlawful employment practice, or a practice they reasonably believed to be unlawful.

70. Louisiana's Whistleblower Law (R.S. 23:967) also protects against retaliation for reporting unlawful practices.

71. Here, UNORTF engaged in retaliation by terminating all three women who complained about and opposed the gender discrimination they observed.

### Count Three – Equal Pay Act

72. The Equal Pay Act prohibits discrimination in compensation on the basis of sex.[4]

73. UNORTF is engaged in commerce or in the production of goods for commerce or employed in an enterprise engaged in commerce or in the production of goods for commerce.

---

[4] 29 U.S.C. § 206(d)(1).

...

74. Based on the actions described above, UNORTF engaged in equal pay violations, through (a) sending women home to use accrued vacation time during COVID-19 and allowing men to remain in the office without having to use accrued vacation time; and (b) providing pay increases for increased work functions to men but not women.

75. The pay discrimination was willful.

### Count Four – Breach of Implied Covenant of Good Faith and Fair Dealing

76. There is an implied covenant of good faith and fair dealing in every contract in Louisiana. *See Bonanza International, Inc. v. Restaurant Management Consultants, Inc*., 625 F. Supp. 1431, 1445 (E.D. La. 1986); *Grisaffi v. Dillard Dep't Stores, Inc.,* 43 F.3d 982, 983 (5th Cir. 1995); *Brill v. Catfish Shaks of America, Inc.,* 727 F.Supp. 1035, 1039 (E.D. La. 1989).

77. UNORTF's acts described above violate that implied covenant of good faith and fair dealing.

### Count Five – State Law Direct Action Claim

78. Defendants XYZ Insurers 1-10, upon information and belief, have issued and/or currently have in effect one or more policies of insurance covering one or more of the Defendants named herein. For valuable consideration received, these policies obligated XYZ Insurers 1-10, jointly and/or severally, to pay on behalf of their insured Defendant(s) any sums the insured Defendant(s) may become obligated to pay to Plaintiff or to indemnify their insured Defendant(s) for any sums the insured Defendant(s) may become obligated to pay to Plaintiff.

79. By reason of their illegal and unconstitutional acts, Defendants are liable to Plaintiff for all damages and injuries they have suffered as a result. Upon information and belief, XYZ Insurers 1-10 are contractually obligated to pay these sums on behalf of the insured Defendant(s).

80. Upon information and belief, XYZ Insurers 1-10 are liable to Plaintiff for any and all damages incurred by reason of the insured Defendant(s)' acts, up to their policy limits, notwithstanding the fact that the insured Defendant(s) may themselves be able to assert claims of

privilege or immunity from liability.

81. Under Louisiana Revised Statute § 22:655(B), Plaintiff brings a direct action against XYZ Insurers 1-10 to recover any and all sums they are obligated to pay Plaintiffs on behalf of their insureds or to indemnify their insureds.

## V. RELIEF REQUESTED

82. Wherefore Plaintiff prays for judgment against Defendants as follows:

(a) For a judgment against Defendants for all asserted causes of action;

(b) For a judgment awarding compensatory and special damages;

(c) For judgment awarding front pay;

(d) For judgment awarding back-pay;[5]

(e) For a judgment awarding Plaintiff her costs and attorney's fees;

(f) Liquidated damages under the Equal Pay Act;

(g) Punitive Damages;

(h) For a judgment awarding pre- and post-judgment interest at the highest rates allowed by law; and

(i) For all other and further relief as may be necessary and appropriate.

83. Plaintiff states any and all other causes of action that may become known through a trial of this matter on its merits against any and all other parties which are herein named or which may be added later, and request any and all other damages or remedies which this Court may seem equitable.

84. Plaintiff reserves the right to notice of defect to this pleading and reserve the right to amend or supplement this Petition after discovery of any additional fact, law, or claim, the amendment of which to be performed by the filing of any subsequent pleading.

---

[5] R.S. 23:967(C)(2).

## **JURY DEMAND**

Plaintiff respectfully requests a trial by jury on all issues so triable.

                               Respectfully Submitted:

                               */s/ William Most*_____
                               William Most (La. Bar No. 36914)
                               Most & Associates
                               201 St. Charles Ave., Ste. 114, # 101
                               New Orleans, LA 70170
                               T: (504) 509-5023
                               Email: williammost@gmail.com

                               ***Counsel for Plaintiff***